### FLOOD v. WESTERN UNION TEL. CO.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

NEGLIGENCE—DANGEROUS PREMISES.

In an action for personal injuries causing the death of plaintiff's intestate, it appeared that intestate, while in the employ of defendant, was sent to put a new insulating peg in a cross-arm on one of defendant's telegraph poles. The cross-arms had holes bored through them in which pegs were set on which to place the insulators. One hole was about 8 inches from the pole, and the other about 2 feet 9 inches. While intestate was putting the peg in the outer hole, the arm broke at the other hole, causing him to fall. There was evidence that the arm had been on the pole from 6 to 10 years, and was "cross-grained and brittle" where it broke. *Held*, that whether defendant was negligent in not discovering the defect, and whether the intestate should have observed and guarded against the defect, and whether he placed more weight on the cross-arm than he should have done, were questions for the jury.

Appeal from circuit court, Onondaga county.

Action by Mary Flood, as administratrix of Timothy Flood, deceased, against the Western Union Telegraph Company for injuries causing the death of plaintiff's intestate. From a judgment entered on a verdict for plaintiff

for $3,000, and from an order denying a motion for a new trial made on the minutes, defendant appeals.

Argued before MARTIN and MERWIN, JJ.

*Jenny, Marshall & Ruger*, for appellant.    *Benedict & Thomas* and *Frank H. Hiscock*, for respondent.

MERWIN, J.  The important question on this appeal is whether the evidence is of such a character as to make a case to go to the jury.  The plaintiff's intestate, on the 8th April, 1889, while in the discharge of his duties as lineman in the employ of defendant, fell from one of its telegraph poles at Baldwinsville, N. Y., and received injuries which caused his death in March, 1890.  This pole was about 22 feet high, and attached to it near the top were three cross-arms, 18 to 20 inches apart, the top arm being about 4 feet long and the others about 6 feet.  In the two lower arms, upon each side of the pole, two holes were bored, which were 1½ inches in diameter.  The hole nearest to the pole was 8 to 10 inches from it, and the other about 2 feet 9 inches. In these holes were placed wooden pins upon which were placed the glass insulators to which the wires were attached.  The outer pin upon one side of the pole on the middle arm was broken, and Flood was directed by his foreman to go up the pole, and put in a new one.  He proceeded to do so, and, while he was in the act of attempting to remove the broken pin, the arm broke at the hole nearest the pole, and he fell.  This arm; according to some of the evidence, was 2¾ inches wide across the top, so that on each side of the hole there was a width of five-eighths of an inch.  The pole and arm had been there from 6 to 10 years, and there is evidence tending to show that the arm where it broke was "cross-grained and brittle,"—"dozy."  The jury had a right to say that it broke by reason of its defective condition; and whether defendant in the exercise of reasonable care ought to have discovered and remedied the defect was also a question for the jury.  But the defendant says it owed no duty to its employes in regard to this arm, beyond seeing that it was sufficient to support the wires; that it was placed there only for that purpose; and that Flood, in supporting himself upon it as he did to a certain extent, did what he had no right to do.  It is quite apparent that in some cases of repairs to the arms it would be almost absolutely necessary to place some weight on the arm, and it was shown that it had long been customary to use the arm to some extent for that purpose, and this, too, to the knowledge of the agent of the company in charge, and without objection, and apparently without any rule against it.  Under these circumstances, it became a question of fact whether Flood placed more of his weight upon the arm than he had a right to, and whether the company performed its whole duty to its employes in regard to a proper inspection of the arm.  But the defendant says that Flood was in a position to know as much about the condition of the arm as the company did.  He was not there for the purpose of inspection.  Aside from visible defects, he had a right to suppose that the company had done its duty.  If Flood observed a defect, it was his duty to remedy it or report it to the company.  So it was in the case of *Bushby* v. *Railroad Co.*, 107 N. Y. 374, 378, 14 N. E. Rep. 407, where the trouble was a defective stake to a freight lumber-car.  Still the plaintiff, a brakeman on the train, was allowed to recover for an injury occasioned by the breaking of the stake.  Here it should not be said, as matter of law, that Flood should have observed and guarded against the defects in the arm.  We think a case was made for disposition by the jury, and that the questions of negligence of the defendant and contributory negligence of Flood were properly submitted.  Judgment and order affirmed, with costs.